## In re CYCLOPEAN CO.

(Circuit Court of Appeals, Second Circuit. February 16, 1909.)

### No. 152.

BANKRUPTCY (§ 387*)—LIQUIDATION AGREEMENT—SECURED CLAIMS—RELEASE OF SECURITY.

Claimant lent money to a bankrupt corporation when it was in financial distress under a written agreement by which he received as security accounts against third persons guaranteed by the company. He advanced under such agreement some $10,000, and was also an unsecured creditor of the company for a small amount. *Held*, that by signing a so-called liquidation agreement for settling the debts of the company with other creditors, no amount being placed opposite his name, he did not relinquish his security and was entitled to hold the same as against the trustee in bankruptcy of the corporation.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 613; Dec. Dig. § 387.*]

Petition for Revision of Proceedings of the District Court of the United States for the Eastern District of New York.

On petition to review a decree of the District Court for the Eastern District of New York, confirming the report of a special master and adjudging: First, that the claimant Frederick L. McAfee is entitled to collect certain accounts receivable of the Cyclopean Company, bankrupt, amounting to $8,528.81. Second, that the said McAfee is entitled to collect from the Para Company, all sums owing from said company to the bankrupt under a contract between them dated Nov. 7, 1906. Third, that the said McAfee account to the trustee in bankruptcy of the Cyclopean Company for any overplus of the said accounts receivable above the sum of $7,785.93 and interest and also for any overplus collected from the Para Company after applying said amounts to the payment of the notes of the bankrupt held by him aggregating $2,182.34 and interest. Fourth, that the trustee in bankruptcy upon demand of said McAfee pay out of the funds in his hands as receiver of the bankrupt, two certain notes or receiver's certificates for the amounts of $1,020.44 and $783.93 which said McAfee shall credit on account of his total secured claims. Fifth, that said McAfee is a general creditor for $241.36 and for any balance not paid from the proceeds of the securities held by him.

The record contains no statement of the proceedings before the special master. If witnesses testified as to what took place when the liquidation agreement was signed the testimony has not been incorporated in the record. The master states that his conclusions were reached "after considering the evidence submitted." In one of the findings of fact printed at the end of respondent's brief it is stated that Rivenburg "wrote his name in the first column at the end of said instrument, with the intention clearly expressed in a conversation then and there had by and between Charles Rivenburg, Albert H. Zugalla and Thomas A. Hill, that said Charles Rivenburg would sign said instrument only as to his claim evidenced by note or notes not secured by assignment of accounts receivable or by assignment of contract." This would seem to indicate that witnesses were examined and that this court has not before it all the facts upon which the master based his findings. The record contains nothing but the written documents and on this record the controversy must be determined.

Francis X. Carmody, for petitioner.

Noble, Jackson & Hubbard (Gordon Gordon and James R. Sloane, of counsel), for respondent.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

COXE, Circuit Judge (after stating the facts as above). The facts, stated chronologically, are as follows: Prior to June 4, 1906, the Cyclopean Company being in need of money entered into an agreement with Charles Rivenburg, by which he agreed to furnish financial assistance, receiving as security therefor, accounts rendered by the Cyclopean Company to its customers, the company guaranteeing payment in full, at maturity thereof, of each and every account assigned to Rivenburg, and that each account should, in all respects, be "true and correct and fully enforceable." The agreement is carefully drawn and enters into minute details of the proposed transactions between the parties. The evident purpose was to safeguard Rivenburg in every possible manner for advances made to the company when its continued existence depended upon financial aid. Prior to April 8, 1907, Rivenburg had loaned to the company amounts aggregating, in round numbers, about $10,000 and held as security therefor assigned accounts for about that amount. On April 8th, the company and certain of its creditors entered into the so-called liquidation agreement by the terms of which Thomas A. Hill, subsequently made the receiver and trustee in bankruptcy, was made attorney "to liquidate, settle, or otherwise properly dispose of the various rights of the parties hereto." The signatures of eleven creditors are attached, among them being Charles Rivenburg's. Only two of the creditors stated the amount of their claims. Rivenburg was both a secured and unsecured creditor but the space opposite his name is left blank.

The liquidation agreement is unique in its provisions. disputes soon arose as to its meaning and litigation followed. Rivenburg insisted that he money collected from accounts assigned as collateral should be paid to him, Hill took the opposite view. On June 5, 1907, a petition was filed in bankruptcy against the Cyclopean Company and on the following day Hill was appointed receiver. On June 20th, the company was adjudicated a bankrupt and on September 24th, Hill was elected trustee. On June 11th, Rivenburg assigned to McAfee, the present claimant, all his claims against the company with the collateral security therefor. On June 26th, McAfee and Hill entered into an agreement reciting the previous steps taken and the litigation between the parties and agreed to refer the question of ownership of the collaterals and the moneys collected therefrom to the referee in bankruptcy. On the 19th day of October, 1907, an order was entered referring the matter to the referee, as special master, to ascertain and report the facts and his conclusions thereon. On March 31, 1908, the master filed his report in favor of the claimant and on June 16, 1908, the District Court confirmed the report, though differing with the master as to some of his conclusions.

Thereafter the decree was entered which is the subject of this review. Owing to the fact that on two occasions the parties attempted to arrange their difficulties outside the ordinary legal channels, the case is sui generis and abounds in objections disputing the jurisdiction of the court, in questions of practice and procedure and in attacks upon the validity of the so-called liquidation agreement. We do not deem it necessary to pass upon these questions. If we are right in

the view we take of the merits of the controversy they will all become academic. The principal question is whether Rivenburg released his security. That he should have done so seems incredible when we consider the motives which govern human conduct. He was a clear-headed, careful, prudent business man. His agreement with the company of June 4th proves this beyond peradventure. He had come to the assistance of the company when it was in sore need of help, he had lent his money with the distinct understanding that every dollar should be secured by an account or bill receivable of the company. Ten months afterwards he had advanced for its benefit, in round numbers, $10,000 and held security therefor, which, for aught that appears to the contrary, was perfectly valid and sufficient to satisfy the loan.

It is an almost unthinkable proposition that a sane man would, without consideration, obligation or advantage of any kind, relinquish his right to $10,000. The company and its creditors already had the benefit of Rivenburg's $10,000. He had, in effect, discounted the company's paper to that amount. If then the avails of these securities are to be taken from Rivenburg, or his assigns, and handed to the creditors, the practical result will be that the creditors will have received $20,000 and Rivenburg's $10,000 will be a total loss except for the percentage he may obtain in dividends.

The contention of the trustee leads to such inequitable results that it fails to satisfy the conscience of the court. The only act of Rivenburg on which the release of the security is based is the signing by of the liquidation agreement. As before stated no amount appeared opposite the signature and the master finds as a fact that he intended to sign the document only as affecting $241, the amount of his unsecured claim. That Zugalla, the secretary and treasurer of the Cyclopean Company, understood that Rivenburg did not intend to release his security is made plain by a certificate signed by him contemporaneously with the liquidation agreement, in which he says:

"It is understood that this act on the part of said Rivenburg shall in no way interfere with or disturb the security undertaken by virtue of a series of promissory notes given by the Cyclopean Company and indorsed by said Zugalla. * * * It is further understood that the contract heretofore entered into on or about June, 1906, between the Cyclopean Company and said Charles Rivenburg shall in no wise be affected by the signing of the aforesaid agreement entitled Liquidation Agreement."

Assuming that there were no disputed facts before the master and that his finding presents a question of law which may be considered by this court upon a petition to review, we have no hesitation in holding, that the signature alone is insufficient to operate as a release of the security. The signature in blank is perfectly consistent with the theory that it was only intended to apply to the unsecured debt. When it is sought to deprive of his security one who has come to the relief of an embarrassed corporation, relying upon the collaterals offered by it, clear and positive proof must be produced. Such proof is not found in this record.

The decree is affirmed with costs.